RECEIVED
USDC, CLERK, CHARLESTON, S

2009 JUN 26  P 2: 45

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Kendall Cohen, Sr., #259087, | C. A. No. 2:08-3327-HMH-RSC |
| Plaintiff, | |
| -versus- | **REPORT AND RECOMMENDATION** |
| Charleston County Sheriff, Al Cannon, Jr., and Deputy Shawn James, | |
| Defendants. | |

This civil rights action under 42 U.S.C. § 1983[1] (West 1994 & Supp. 1998) brought by a state prisoner proceeding pro se and in forma pauperis is before the undersigned United States Magistrate Judge for a report and recommendation on the defendants' motion for summary judgment. 28 U.S.C. § 636(b).

---

[1] Section 1983, titled a civil action for deprivation of rights reads in relevant portion:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

1

On October 1, 2008, the plaintiff, Kendall Cohen, Sr., brought this action alleging the use of unconstitutional excessive force during his arrest on July 6, 2007, and named Charleston County Sheriff Al Cannon, Jr. and Charleston County Sheriff's Department Deputy Shawn James as defendants. Plaintiff sued the defendants in their official and individual capacities and seeks damages.

The defendants filed a motion for summary judgment on February 25, 2009, as well as incident reports and affidavits. On March 2, 2009, the plaintiff was provided copies of the motions and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). The plaintiff opposed the motion on April 29, 2009, with his own affidavit and exhibits. Hence, it appears consideration of the motion is appropriate.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and on which he bears the burden of proof. Id., 477 U.S. at 322.

The party seeking summary judgment must inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim. The party opposing summary judgment must then point to facts evidencing a genuine issue for trial. Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "unsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants. See Anderson, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by

a preponderance of the evidence, that the plaintiff is entitled to judgment in his favor. Id., 477 U.S. at 252.

## FACTS

The facts either undisputed or according to the plaintiff as the non-moving party, to the extent they are supported by the record, and all reasonable inferences therefrom are as follow.

On July 6, 2007, at approximately 7:30 p.m. while it was daylight, defendant Deputy James was traveling south on Highway 17 South in Charleston County in a marked Charleston County Sheriff's patrol vehicle. James was operating a radar device and saw a gold Chevrolet Tahoe operated by the Plaintiff Cohen passing a vehicle in the northbound lane of Highway 17 at what appeared to him to be a high rate of speed. He activated the radar which indicated that the Tahoe was traveling at seventy-six (76) m.p.h. in a fifty-five (55) m.p.h. speed zone.

James entered the median to turn around so that he could stop the Tahoe for speeding. He then saw that the Tahoe had increased its speed and had turned left through a red light into a residential neighborhood. It appeared to James that the driver was trying to evade him and James activated his blue lights and siren and followed the Tahoe into the neighborhood. James advised dispatch that he was a vehicle in pursuit.

Plaintiff Cohen knew he "was being chased for a speeding violation."[2] (Complaint pg. 3). Plaintiff turned left and back again towards Highway 17, driving through a deep ditch and onto the southbound lane of the highway headed against traffic. Plaintiff then drove through the median and onto the northbound lane of the highway. James reentered the highway and resumed his pursuit of the fleeing Tahoe which was then traveling at speeds of 90 to 100 m.p.h.

The Tahoe turned left into the Melrose residential subdivision. At that time James was able to see that the Tahoe's driver was an African-American man wearing a white t-shirt. The driver then turned the Tahoe around through a dirt area and drove back onto Highway 17. Plaintiff then went into another entrance for the Melrose subdivision and onto Terrell Street.

Next, the Tahoe stopped abruptly and parked in the roadway with the headlights facing to the right. Plaintiff quickly got out of the Tahoe and ran around the front end of the Tahoe and to the right. Defendant James, who was in full Sheriff's Department

---

[2] In Plaintiff's affidavit in support of his opposition to summary judgment he stated that he "was not aware of why I was being pursued." (Pl. Aff. para. 8). However, a party cannot create a genuine issue of material fact by presenting his or her own conflicting versions of events. Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.").

uniform, stopped his car with blue lights and siren still activated, and began a foot pursuit of the plaintiff.

At that time, James saw that the fleeing plaintiff was carrying what appeared to be a shotgun in his left hand and a pistol in his right hand. James ran after the plaintiff when the plaintiff apparently ran into a fence gate and fell down. Plaintiff immediately got up and grabbed what James could plainly see was a sawed off shotgun and large caliber pistol. Plaintiff does not deny that he had the weapons at that time. The plaintiff does complain that James "never sought to stop [him] till I started over a wall and never identified himself." (Complaint pg. 3). Further, "had Deputy James ordered me to halt with the police notification I would have." Id. Plaintiff did not stop running away with the guns.

Then, an older man came out of a side door of a residence in the vicinity of the chase. James feared that he would be injured if the plaintiff began shooting so he tried to hit the plaintiff with his Taser. The Taser missed the plaintiff who turned and saw James running towards him. Plaintiff knew James had fired the Taser at him and missed. Again, James was in full uniform and due to the time of year, it was still daylight.

At that point James un-holstered his department issued firearm. Plaintiff threw down the shotgun and kept the pistol in his right hand.

6

James affied that he saw that the plaintiff, while still running, turn and look at him over his right shoulder and start to raise the pistol in James' direction. The plaintiff "did not point a weapon at Defendant James." Id. In any event, James fired at least one shot, but the plaintiff did not drop the pistol and continued running towards the back fence. The plaintiff contends that he did not have the pistol when next James fired several more shots as Plaintiff jumped a fence into another yard. Plaintiff was struck in the leg and buttocks. James affied that he believed that the plaintiff had the pistol when he fired the two shots at him and believed he and others were in danger. James contends that only after being shot did the plaintiff drop the gun. Plaintiff affied that he was unarmed when he was struck by the bullets, having dropped the gun at some point before the shooting. Plaintiff acknowledged that he "was found to have [had] a weapon"[3] but believes that that did not justify the defendant's actions" and the plaintiff also speculates that James "profiled him out of all the other citizens traveling on Route 17." Id.

Once James saw that the plaintiff had dropped his pistol, he

---

[3] In fact, two passengers in the Tahoe confirmed in later statements that Plaintiff did run from the Tahoe with two guns, a sawed off shotgun and a .357 magnum pistol. (Def. Exs. 4 and 5). Both weapons were loaded as determined by forensic tests performed by the State Law Enforcement Division. (Def. Ex. 6, SLED Forensic Laboratory Firearms Department Report).

fired no more shots. He stayed with Plaintiff until backup units arrived. Plaintiff was taken by ambulance to the Medical University of South Carolina for treatment, including two surgeries. The injuries caused Plaintiff great pain and continue to be painful. Plaintiff also experiences nightmares about the shooting.

Plaintiff was later charged with Driving Under Suspension 2nd, Failure to Stop for Blue Lights and Siren, Assault With Intent to Kill, Possession of a Firearm in the Commission of a Violent Crime, and Resisting Arrest with a Deadly Weapon. The record does not indicate how these charges were disposed of, but the defendants do not argue that the action is barred by Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994) (which requires the dismissal of civil cases that necessarily impugn the validity of criminal convictions).

James affied that as a deputy with the Charleston County Sheriff's Office, he receive annual block training on such issues as use of force and, specifically, use of deadly force. Further, he stated that at no time did he consciously disregard or violate Plaintiff's civil rights, rather that he tried unsuccessfully to stop the plaintiff with lesser means and knew that the plaintiff was an immediate threat to himself and others.

## **DISCUSSION**

A review of the record and relevant case law reveals that the defendants' summary judgment motion should be granted.

As an initial matter, Plaintiff's claims against these defendants in their official capacities seeking monetary damages are barred by the Eleventh Amendment. The Eleventh Amendment bars suits in federal courts for money damages against an "unconsenting State." Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347 (1974). This immunity extends to "arm[s] of the State," Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280, 97 S.Ct. 568(1974), including state agencies and state officers acting in their official capacity. Gray v. Laws, 51 F.3d 426, 430 (4th Cir. 1995). The individually-named Defendants are the Sheriff and a Deputy Sheriff. Sheriffs in South Carolina are an "arm of the state." See Gulledge v. Smart, 691 F.Supp. 947 (D.S.C. 1988) (holding that South Carolina sheriffs are state officials for Eleventh Amendment purposes), aff'd mem., 878 F.2d 379 (4th Cir. 1989). Therefore, to the extent Plaintiff sued the defendants in their "official capacities," Defendants, as the Sheriff and an employee of the Sheriff, are immune from suit as they are treated as "arms of the State." Will v. Michigan Dep't of State Police, 491 U.S. 58, 70, 109 S.Ct. 2304 (1989).

However, to the extent Plaintiff seeks damages from the individuals in their individual capacities, the individual Defendants are not protected by Eleventh Amendment immunity.

## **EXCESSIVE FORCE CLAIMS**

The plaintiff's claim is controlled by the Fourth Amendment which governs claims of excessive force during the course of an arrest, investigatory stop, or other "seizure" of a person. Graham v. Connor, 490 U.S. 386, 388, 109 S.Ct. 1865 (1989). Determining whether the force used to carry out a particular arrest is "unreasonable" under the Fourth Amendment requires "balanc [ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694 (1985). The outcome of this balancing test necessarily depends on the facts and circumstances of the particular case. Garner, 471 U.S. at 8-9 (question is "whether the totality of the circumstances justifie[s] a particular sort of search or seizure").

In striking this balance, due regard must be given to the fact that law enforcement officers must make split-second judgments about the amount of force necessary to effect a particular arrest, in circumstances that are stressful and rapidly changing. See Garner, 471 U.S. at 26 (O'Connor, J., dissenting). Factors to consider in this analysis include, "the

10

severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. The court must also consider the extent of the injuries caused to the plaintiff. See Jones v. Buchanan, 325 F.3d 520, 530-31 (4th Cir. 2003) (internal citations omitted); see also Brown v. Gilmore, 278 F.3d 362, 369 (4th Cir. 2002). The reasonableness of the officer's use of force must be determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396 (recognizing that the police must often make "split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving").

Additionally, the standard of "reasonableness" under the Fourth Amendment is wholly objective; the question is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting him, without regard to his own subjective intent or motivation. Scott v. United States, 436 U.S. 128, 137-38, 98 S.Ct. 1717 (1977); see Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868 (in assessing the reasonableness of a particular search or seizure "it is imperative that the facts be judged against an objective standard"). Subjectively bad intentions on the part of the individual officer will not make a constitutional violation out of an otherwise reasonable seizure;

nor will subjectively good intentions render an objectively unreasonable seizure constitutional. Id.; see Lester, 830 F.2d at 712.

The use of deadly force by a police officer is reasonable when the officer has "probable cause" to believe that the suspect poses a threat of serious physical harm to the officer or to others. Tennessee v. Garner, 471 U.S. 1, 11, 105 S.Ct. 1694 (1985). Where a suspect poses no immediate threat, the use of deadly force is not justified. However, "if the suspect threatens the officer with a weapon ... deadly force may be used if necessary ... and if, where feasible, some warning has been given." Id. at 11-12.

Of further importance here, the employ of deadly force against a fleeing suspect is only reasonable if, in addition, such force "is necessary to prevent the escape" of the suspect. Garner, 471 U.S. at 3, 105 S.Ct. 1694.

This is not a difficult case. Accepting Plaintiff's version of contested facts as true for purposes of summary judgment, it appears that James' use of deadly force is reasonable as James had "probable cause" to believe that the plaintiff posed a threat of serious physical harm to himself or to others and such force "[was] necessary to prevent the escape" of the suspect. Tennessee v. Garner, 471 U.S. 1, 3, 11, 105 S.Ct. 1694 (1985).

The court evaluates the reasonableness of the officer's

conduct "from the perspective of the officer on the scene, not through the more leisurely lens of hindsight", <u>Abney v. Coe</u>, 493 F.3d 412, 416 (4th Cir. 2007), because officers must make "split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving," <u>Graham v. Connor</u>, 490 U.S. 386, 396, 109 S.Ct. 1865 (1989).

Thus, the court is to consider only "the information possessed by the officer at the moment that force is employed." <u>Waterman v. Batton</u>, 393 F.3d 471, 477 (4th Cir. 2005). With those principles in mind, it is important to recount what Officer James knew in the moments leading up to the shooting. He knew that the plaintiff, in leading him on a high speed car chase in his marked law enforcement vehicle with its blue lights and siren on in the daylight, in and out of residential areas and busy highways including traveling in the face of oncoming traffic, was breaking the law, endangering the lives of the officer and others, and attempting to evade arrest. He knew that Plaintiff then abandoned his Tahoe and attempted to escape on foot through the backyards of homes in a residential neighborhood while armed with two deadly weapons, again breaking the law, endangering the life of James and others, and clearly attempting to evade arrest by flight. He knew that Plaintiff refused to give up even after having a Taser shot at him as well as the first gun shot. He

believed that the plaintiff looked back at him in a menacing manner while armed with the guns.

Plaintiff makes much of his position that he did not retain the pistol at the exact moment James shot him. Plaintiff does not indicate when he dropped the pistol, or whether he knows that James saw him drop the pistol. The proper test is whether a reasonable officer in Officer James' position would have perceived Plaintiff's actions to be threatening. See Garner, 471 U.S. at 3. For example, the Fourth Circuit has held that an officer may use deadly force in certain circumstances even when the officer has not confirmed that the suspect is armed. See McLenagan v. Karnes, 27 F.3d 1002, 1007 (4th Cir. 1994) ("[W]e do not think it wise to require a police officer, in all instances, to actually detect the presence of an object in a suspect's hands before firing on him.") Considering the "tense, uncertain, and rapidly evolving" circumstances preceding the shooting, Graham, 490 U.S. at 396, 109 S.Ct. 1865, it can hardly be said that Deputy James was unreasonable in believing that the pistol posed a serious threat.

On these facts, it appears that the plaintiff's constitutional rights were not violated by Deputy James. Likewise, since no right was violated, Plaintiff cannot prevail on his claim that Sheriff Cannon failed to properly train Deputy

James, and that such failure proximately resulted in his alleged use of excessive force.

It also appears that the defendants' contention that they are entitled to qualified immunity in their individual capacities is correct and is an alternate ground for dismissal of the action. See <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 102 S.Ct. 2727 (1982).

### **CONCLUSION**

Accordingly, for the aforementioned reasons, it is recommended that the defendant's motion for summary judgment be granted, any outstanding motions be denied as moot, and this matter ended.

Respectfully Submitted,

*/s/ Robert S. Carr*

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

June 26, 2009

15

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985).